Charles H. Norman, et al., Plaintiffs-Appellees, v. Local No. 4, International Brotherhood of Electrical Workers, AFL-CIO, et al., Defendants-Appellants.

Gen. No. 62–O–37.

Fourth District.
April 2, 1963.

Thomas Q. Keefe, of East St. Louis, and Schuchat & Cook, by Charles A. Werner, of St. Louis, Missouri, for appellants.

Lueders and Robertson, by Leo Konzen, of Granite City, and Shifrin, Treiman, and Agatstein & Schermer, by J. Leonard Schermer and Stanley L. Ruby, of St. Louis, Missouri, for appellees.

SCHEINEMAN, P. J.

This is an appeal from a decree awarding a temporary injunction to plaintiffs, restraining the defendants from doing certain acts set forth in the complaint, and proved on the temporary hearing. At the beginning of the hearing the defendants noted an objection to the jurisdiction of the court, on the principal ground that the National Labor Relations Board had exclusive jurisdiction of the matters involved.

The hearing proceeded without difficulty, and a considerable amount of stipulation was used to expedite the case. The undisputed facts appear to be these:

Local No. 4, International Brotherhood of Electrical Workers (hereafter referred to as No. 4), and Local No. 525 Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereafter referred to as No. 525), were both seeking to organize nine operating or technical employees of Radio Station WGNU, Granite City, Illinois, owned and operated by plaintiffs. There is no indication in the record of any jurisdictional dispute. It was simply two rival unions seeking to organize the same group.

Local No. 4 filed a petition with the National Labor Relations Board, but was informed that the Board limits its inquiry to employers doing an annual business of at least $1,000,000. Plaintiffs do not meet this requirement, so the defendants voluntarily withdrew their petition. Thereafter, Local No. 525 notified plaintiffs that it represented a majority of the nine affected employees and sought a recognition agreement. When plaintiffs had satisfied themselves that five of the employees had signed as members of that union, they agreed to the proposal. A union shop agreement was prepared and executed by the parties.

The defendants were informed of this contract, therefore, it might seem the matter was settled. On the contrary, the real trouble arose shortly thereafter, Local No. 4 caused letters to be sent to the regular advertisers who had contracted for substantial time on the radio station, announcing a strike, and which contained the following paragraph:

> "We plan to distribute handbills (of the type enclosed) in front of Companies and Stores who advertise on Radio Station WGNU. Our sole purpose in distributing these hand bills is to inform the public of the strike and to request the public

424

not to patronize those who advertise on Radio Station WGNU."

The enclosed handbill read as follows:

"PLEASE DO NOT PATRONIZE THIS BUSINESS ESTABLISHMENT AS LONG AS THEY ADVERTISE ON WGNU AM.

IBEW LOCAL 4
Members on Strike."

The record discloses that two of the four original sympathizers with No. 4 had voluntarily left the employment of plaintiff. There is nothing to disclose the activity of the other two, but there is no evidence that there was any strike, work stoppage, or labor dispute, then extant at the station.

The response to the circular letter was prompt and forceful. Five customers representing a substantial amount of contracted weekly advertising time, canceled their contracts. Others gave notice they would do so upon the first appearance of pickets and handbills.

Thereafter the suit for injunction was filed, hearing held upon notice, and the defendants were restrained from distributing written material or oral matters inducing breach of contract between plaintiffs and advertisers; conveying anything to induce advertisers to breach their contracts; interfering with property rights of plaintiff, especially in contracts with customers; representing that plaintiffs are employing workers not represented by a union when such is not the case; doing any unlawful act to prevent plaintiffs or customers from carrying out lawful contracts or conducting business in a lawful manner.

■ ■ It is the law of this state that inducing breach of contract is a tortious act for which damages may be recovered, Morehouse v. Terrill, 111 Ill App 460; and is a proper subject for injunctive relief, Mead-

owmoor Dairies, Inc. v. Milk Wagon Drivers' Union Local 753, 371 Ill 377, 21 NE2d 308. Doubtless the trial court allowed the injunction in reliance on these principles, as the law of this state and many others.

■ The activities of the defendants are also made illegal under federal law. Parts of Sections 8(b)(4) (1) (11) A and B of the National Labor Relations Act declare it is an unfair labor practice for a union or its agents to threaten, coerce, or restrain persons in an industry affecting commerce, with the object of forcing or requiring an employer "to cease doing business with any other person."

The defendants have threatened to distribute handbills designed to induce the public to cease patronizing a business that advertises on Station WGNU. The plain object of this threat is to force these advertisers to cease doing business with plaintiffs' radio station. The circulation of this threat has already procured cancellation of some contracts.

■. This court is compelled to find that the conduct of the defendants is a prohibited activity under the federal statute above cited. This finding makes it necessary to reverse the decree appealed from, for the following reasons:

■ ■ When conduct is regulated both by valid federal, as well as state law, conflicts of authority may possibly arise. In that event, it is easy to conclude that the federal authority is, and must be, paramount. This concept is not accepted as sufficient by the United States Supreme Court, which goes further and holds that when federal statutes regulating conduct are enacted, congress has thereby "preempted" the field. For a history of the development of this theory, see: San Diego Building Trades Council v. Garman, 359 US 236, 79 S Ct 733, 3 L Ed2d 755.

■ ■ Under this doctrine the federal authority vested in the National Labor Relations Board is not only paramount, it is *exclusive*. Even when the Na-

426

tional Labor Relations Board declines to take or accept jurisdiction, pursuant to its regulations, state authorities remain powerless in the pre-empted field. An exception is indicated where there is excessive picketing or violence, so that the state may preserve the peace.

Counsel for plaintiffs argue that these principles do not apply in this case because there is no labor dispute involved. This is not the rule as to the type of activity here involved. There are some provisions of the National Labor Relations Act which protect certain union activity, and state courts may take jurisdiction when there is no labor dispute involved. But that does not apply to the prohibited activities in the sections herein cited. In a recent case of prohibited activity where there was no labor dispute, the United States Supreme Court reversed a state court injunction order. Marine Engineers Beneficial Ass'n v. Interlake Steamship Co., 370 US 173, 82 S Ct 1237, 8 L Ed2d 418.

Counsel informed this court that advertisers who have received the threats (secondary employers) do an annual business in excess of $100,000 and that the National Labor Relations Board has indicated it would now accept the case for that reason. The Board has ample powers in this type of situation.

For the reasons given the decree is reversed and the cause remanded with directions to dissolve the injunction and dismiss the suit.

Reversed and remanded.

CULBERTSON and HOFFMAN, JJ., concur.